IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| ALONZO GREENE, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14-CV-153 |
| | ) | |
| COUNTY OF DURHAM OFFICE | ) | |
| OF THE SHERIFF DEPARTMENT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on a motion to dismiss filed by a retired sheriff of Durham County, the current sheriff of Durham County, and several detention officers at the Durham County jail. (Doc. 11.) The plaintiff has sued each defendant in his or her official and individual capacity. The Court will dismiss all official capacity claims. All individual capacity claims except those against the current sheriff and the former sheriff are sufficient to state a claim and may proceed.

## **FACTS**

According to the complaint,[1] the plaintiff, Alonzo Greene, was a pretrial detainee in the Durham County Detention Facility. (Doc. 2 at p. 3 ¶ 2.) At approximately 8:30

---

[1] This recitation of facts comes from the allegations in Mr. Greene's complaint, (Doc. 2), which the Court must assume are true for purposes of ruling on a motion to dismiss for failure to state a claim. Citations to the complaint reference the page number appended by the CM-ECF system and the paragraph number assigned by Mr. Greene. Mr. Greene occasionally references exhibits in his complaint, but no exhibits were attached to the complaint on file with the Court.

p.m. on August 21, 2011, detention officers searched Mr. Greene's jail cell and destroyed or damaged legal and religious materials while various other officers searched him outside his cell. (*Id.* at ¶¶ 4-7.) When officers returned Mr. Greene to his cell, he could not find his "Islamic Ramadan" dinner tray, which was there before the search. (*Id.* at ¶ 8.) He asked Sergeant Holloway who had "trashed" his cell and taken his food and tray. (*Id.* at ¶ 9.) Sergeant Holloway said his dinner had been thrown away and denied his requests to replace the tray. (Doc. 2 at p. 4 ¶ 11.)

Soon after, several detention officers entered his cell and began threatening and physically assaulting Mr. Greene, while using profanity and taunting him. (Doc. 2 at pp. 4-6 ¶¶ 13-20.) Sergeant Holloway and other detention officers looked on and did not intervene. (*Id.*) Over the next several hours, detention officers hit, kicked, choked, and threatened Mr. Greene, all while directing profanity and verbal taunts towards him. (Doc. 2 at pp. 6-9 ¶¶ 21-31.) Officers ignored Mr. Greene's requests for medical care during these assaults. (Doc. 2 at pp. 5-8, ¶¶ 17, 21, 27, 28.)

Eventually, one officer dragged Mr. Greene out of his cell, down the stairs, and to the elevator, ignoring Mr. Greene's statements that he could not breathe, threatening Mr. Greene, and telling him to be quiet. (Doc. 2 at p. 9 ¶¶ 32-34.) Officers placed Mr. Greene in the Special Housing Unit ("SHU"), also called "the hole." (*Id.* at ¶ 36.) Despite his obvious injuries, officers ignored his requests for his asthma inhaler and medical care. (Doc. 2 at p. 10 ¶¶ 37-38.) One hour later, officers took Mr. Greene to the medical area, where the attendant on duty smirked and made physical gestures and verbal comments of disbelief in response to Mr. Greene's statements about the assaults. (Doc. 2

at pp. 11-12 ¶¶ 43-46.) The attendant refused to examine Mr. Greene and did not provide any medical care beyond giving him an ice pack, despite visible bumps, cuts, scrapes, and blood coming from his nose and mouth. (*Id.* at ¶¶ 44-47.) Detention officers returned Mr. Greene to the SHU and placed him in a cell without clothes, a blanket, or a mattress. (Doc. 2 at pp. 12-13 ¶ 51.)

Mr. Greene continued to seek medical care and was finally seen by a doctor on September 8, 2011, where he was diagnosed with a concussion. (Doc. 2 at pp. 16-18 ¶¶ 69-71, 74.) He continues to experience blurred vision and other eye problems. (Doc. 2 at pp. 6-7 ¶ 23.)

## PROCEDURAL STATUS

Mr. Greene has sued, *inter alia*, former Sheriff Hill, the "Office of the Sheriff," and numerous detention officers, asserting a due process claim under *Bell v. Wolfish*, 441 U.S. 520 (1979), (Doc. 2 at p. 20 ¶ 87), an excessive force claim, (Doc. 2 at pp. 21-22 ¶ 91), a supervisory liability claim, (Doc. 2 at p. 22 ¶ 92), a claim for failure to timely provide adequate medical care, (*id.* at ¶ 94), and a First Amendment claim. (Doc. 2 at p. 26 ¶ 116.) Mr. Greene has sued each defendant in his or her official and individual capacity. (Doc. 2-1 at 1.) Former Sheriff Worth Hill, current Sheriff Michael D. Andrews, and detention officers Minor, Johnson, Jones, Holloway, Collier, Rome, Moore, and Brown move to dismiss for lack of jurisdiction based on Eleventh Amendment immunity and qualified immunity and for failure to state a claim on which relief may be granted. (Doc. 11.)

## ANALYSIS

1. <u>Former Sheriff Hill</u>

Former Sheriff Hill moves to dismiss for failure to state a claim. The only specific allegations related to Sheriff Hill come in three paragraphs of the complaint.

In paragraph 67, Mr. Greene alleges that on or about August 24, 2011, he submitted a "grievance/complaint form Personally [and] directly to Def. Sheriff Worth L. Hill (over-seer of DCDF), and requested a prompt investigation into the unwarranted, unjustified, and excessive beatings, false confinement, bogus disciplinary charges, and denial of medical treatment," and that Sheriff Hill took no action in response. (Doc. 2 at pp. 15-16 ¶ 67.)[2] At paragraph 104, he alleges that "the Sheriff, and the office of the sheriff, who's responsible for DCDF [and] its staff/defs., knew or should have known of the patterns, and common practices of wrongs that its employees/defs. have been committing, yet failed, refused, and deliberately turned its' heads to correct same . . . ." (Doc. 2 at p. 24 ¶ 104.) At paragraph 107, he alleges that "the mentioned acts/wrongs are not isolated ones, and are acts that the defs. are continuously committing, and were brought to the attention of the Sheriff (Hill) . . . to no avail . . . ." (*Id.* at ¶ 107.)

The doctrine of respondeat superior generally may not be invoked to impose liability on a supervisor. *See, e.g.*, *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (holding that a plaintiff must show three things to establish supervisory liability under § 1983: the supervisor had actual or constructive knowledge that the subordinate was

---

[2] All quotations come directly from Mr. Greene's complaint without correction and without explanation of his abbreviations. (*See* Doc. 2.)

engaged in conduct posing a pervasive risk of constitutional injury, an inadequate response to that knowledge, and causation between the supervisor's inaction and the injury). In his complaint, Mr. Greene does not mention any other specific incident preceding the events at issue, much less any incident that involved the same detention officers and of which the Sheriff was aware. *See Wilkins v. Montgomery*, 751 F.3d 214, 226-27 (4th Cir. 2014) (noting that the subordinate's conduct must be "pervasive" and "widespread"); *Shaw*, 13 F.3d at 799. Mr. Greene's allegations of pervasive misconduct by detention officers are conclusory and insufficient to state a claim. *See generally Dillard v. Fox*, No. 2:08cv016, 2009 WL 88879, at *3-4 (W.D.N.C. Jan. 12, 2009) (explaining and applying differences in official- and individual-capacity claims against supervisors). The Court will dismiss the claims against Sheriff Hill.

2. Sheriff Andrews

Sheriff Andrews moves to dismiss for failure to state a claim. The complaint does not list Sheriff Andrews by name as a defendant, nor does it reference any actions taken by him. On the other hand, the complaint does list the "Office of the Sheriff" as a defendant.

There is uncertainty as to whether the "office of the sheriff" is an entity capable of being sued. *See McNeil v. Guilford Cnty. Sheriff Dep't*, No. 1:09CV999, 2010 WL 377000, at *3 n.3 (M.D.N.C. Jan. 25, 2010) (opinion of Auld, M.J.) (collecting cases). Because the complaint does not mention Sheriff Andrews by name or attribute any action or omission to him, the Court does not read the complaint as attempting to assert a claim against Sheriff Andrews in his individual capacity. Rather, the Court reads the complaint

5

to assert a claim against the current occupant of the sheriff's seat, Sheriff Andrews, in his official capacity only.

Sheriff Andrews moves to dismiss the claim against him in his official capacity, contending that the allegations are insufficient to establish that the conduct at issue arose from a policy or custom. *See McMillian v. Monroe Cnty.*, 520 U.S. 781, 784 (1997) (noting that "a local government is liable under § 1983 for its policies that cause constitutional torts"); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (requiring more than a single incident of excessive use of force to raise an inference of inadequate training); *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (identifying four possible sources of official policy or custom giving rise to municipal liability). Mr. Greene's allegations do not mention written ordinances and regulations or affirmative decisions of individual policymaking officials. *Carter*, 164 F.3d at 218. His allegations of omissions by policymaking officials that manifest deliberate indifference to the rights of the citizens, *id.*, of practices so persistent, widespread, permanent, or well-settled as to constitute a custom or usage with the force of law, *id.*, and of inadequate training, *Tuttle*, 471 U.S. at 823-24, are conclusory and insufficient to state a claim. The Court will dismiss the claims against Sheriff Andrews.

    3. <u>Detention Officers</u>

The named detention-officer defendants move to dismiss for failure to state a claim and based on Eleventh Amendment and qualified immunities. To the extent the detention officers assert that the claims against them in their official capacities should be dismissed, the motion will be granted; as noted *supra*, the plaintiff's allegations of a

policy or custom are inadequate. The Court therefore need not address the defendants' Eleventh Amendment immunity argument, which is much more problematic.

As to the motion to dismiss for failure to state a claim against them in their individual capacities, the defendants' brief only addresses Mr. Greene's inadequate medical care claim. (*See* Doc. 12 at 7-10.) The standard for reviewing medical care claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that which applies to a convicted prisoner under the Eighth Amendment: deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976)). "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin*, 849 F.2d at 871).

While pretrial detainees often bring deliberate indifference claims against doctors or nurses working in detention facilities, deliberate indifference can be manifested by prison guards who intentionally delay or deny medical treatment. *See, e.g.*, *Estelle*, 429 U.S. at 104-05; *Sosebee v. Murphy*, 797 F.2d 179, 183 (4th Cir. 1986). In *Estelle*, the Court stated:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

7

> Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983.

*Estelle*, 429 U.S. at 104-05 (footnotes and citation omitted); *see also Sosebee*, 797 F.2d at 183 (holding that evidence that guards were aware of an inmate's worsening and life-threatening condition, intentionally ignored the situation, and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference).

The detention officers contend that Mr. Greene has not pled facts indicating that he actually had a serious medical condition or suffered an actual injury, and they contest the adequacy of Mr. Greene's allegations about the actual knowledge and subjective intent of the officers. (Doc. 12 at 8-10.) This argument borders on being frivolous. The defendants' brief barely discusses the specifics of Mr. Greene's complaint, (*see id.*), and even that limited discussion is selective and ignores most of his allegations.

Mr. Greene alleges with great specificity that: (1) several detention-officer defendants assaulted him over the course of several hours, including repeatedly kicking, punching, and choking him, and inflicting blows to his head, while other officers watched without intervening; (2) he had obvious injuries, including cuts, scrapes, and blood coming from his nose and mouth; (3) the officers refused to take him to obtain medical care during the assault and refused to bring him his inhaler, even though Mr. Greene told them he had asthma and could not breathe; (4) after the beating, the officers left him handcuffed in a cold cell with no clothes for more than one hour; (5) when officers did take him for medical care, the attendant on duty provided only an ice pack despite Mr. Greene's obvious injuries, after which the officers returned him to his cold cell and

refused to give him any clothing or retrieve his inhaler from his cell; (6) he was diagnosed with a concussion when he finally received medical care several days later; and (7) he still suffers from blurred vision and other eye problems. At this stage, the Court must assume these facts are true.

Well-established Fourth Circuit case law indicates that guards who intentionally ignore pleas for medical care from inmates in obvious pain or with obvious injuries are subject to liability. *See, e.g.*, *Cooper v. Dyke*, 814 F.2d 941, 945-46 (4th Cir. 1987) (upholding a jury verdict against officers who ignored indications that an inmate was suffering from intense pain from a bullet wound and caused delay in his treatment); *Loe v. Armistead*, 582 F.2d 1291, 1296 (4th Cir. 1978) (allowing a deliberate indifference claim to proceed where an inmate alleged officers intentionally delayed medical treatment for his obvious broken arm causing excruciating pain); *Sosebee*, 797 F.2d at 182-83 (holding that evidence that guards observed an inmate's severe symptoms and grave physical state and intentionally delayed medical care could support a jury finding of deliberate indifference). The defendants have cited no case holding that officers who participate in or observe a brutal beating of an inmate over the course of several hours, refuse to take the inmate to receive medical care after he receives numerous blows to the head and displays visible cuts, scrapes, and bleeding from the mouth and nose, and who thereafter deny the inmate's requests for his inhaler have not violated the inmate's due process right to adequate medical care.

The complaint may well be insufficient to state a claim for inadequate medical care as to some of the individual detention officers. However, the defendants have made

9

no effort to differentiate between and among the individual officers or to apply the law to the specific allegations made against those officers. Because the defendants have treated the detention officers as a group, the Court will do the same. It is not the Court's duty to make arguments for any litigant, and the Court is not required to address perfunctory arguments.[3]

Similarly, the defendants ignore Mr. Greene's claims for due process violations, First Amendment violations, and excessive force, and make no specific argument that he does not state a claim for relief on these theories. Because the defendants have failed to offer support for their motion to dismiss these claims, *see supra* note 3, the motion is denied, and these claims may proceed.

The defendants' argument for qualified immunity is similarly cursory. The defendants do not discuss any specific causes of action or identify the elements of those causes of action, nor do they identify cases that provide the standard against which to judge the alleged conduct in constitutional terms. Moreover, it is frivolous to assert that detention officers who allegedly participated in the events set forth by the plaintiff would be entitled to qualified immunity on all claims.

---

[3] *See Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating district judges "cannot be expected to construct full blown claims from sentence fragments"); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing in a *pro se* case that the district court is not expected to assume the role of advocate for a *pro se* plaintiff); *see also Spath v. Hayes Wheels Int'l–Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (quotation marks omitted)); *Hughes v. B/E Aerospace, Inc.*, No. 1:12CV717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014) ("A party should not expect a court to do the work that it elected not to do."); L.R. 7.2(a) (requiring litigants to refer to statutes, rules, and authorities in support of their arguments).

The Court appreciates the difficulties involved in dealing with *pro se* complaints, but those difficulties do not excuse a litigant from providing legal support for arguments the litigant asks the Court to address[4] or from making arguments well-grounded in law. Defense counsel is warned that the Court will not do her legal work for her, that it will examine her future filings with Rule 11 in mind, and that it will consider sanctions *sua sponte* if appropriate.

It is hereby **ORDERED** that the motion to dismiss, (Doc. 11), is **GRANTED in part and DENIED in part**. The plaintiff's claims against former Sheriff Hill in all capacities, Sheriff Andrews in all capacities, the Office of the Sheriff, and Defendants Minor, Johnson, Jones, Holloway, Collier, Rome, Moore, and Brown in their official capacities are **DISMISSED**. The claims against Defendants Minor, Johnson, Jones, Holloway, Collier, Rome, Moore, and Brown in their individual capacities may proceed.

This the 28th day of October, 2014.

_____
UNITED STATES DISTRICT JUDGE

---

[4] This is the second case the Court has seen where Ms. Inserra has made arguments without legal support and other perfunctory arguments with the apparent expectation that the Court will do her legal research for her. *See Allen v. Caviness*, No. 1:14CV93, (M.D.N.C. Sept. 5, 2014), ECF No. 22 at 2, 4.